**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 20-cr-60104-Bloom/Valle

18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)
18 U.S.C. § 1957(a)

FILED BY_____D.C.

SEP 2 9 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**UNITED STATES OF AMERICA**

**v.**

**MARK LOUIS VOLLARO,**
**ANTHONY JOSEPH LOVELAND,**
**LUIS GARCIA,**
**ROBERT CHARLES CLARK,**
**JASON TODD FALEY,**
**JOSEPH ANTHONY CAVALLO,**
**MARGARET ANNE CHIASSON,**
    **a/k/a "MEGANNE CHIASSON,"**
**JAMES DONALD ENGIMANN,**
**BENJAMIN CLARK HEATH,**
**ANTONIO JOHN GOUSGOUNIS, and**
**CHRISTOPHER MARGAIT,**

              **Defendants.**

---

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

**<u>Corporate Entities</u>**

1.      USA Healthcare Inc. (hereinafter referred to as "USA Healthcare") was incorporated under the laws of the State of Florida on February 25, 2014, and maintained an office located at of 3350 NW Boca Raton Blvd., Suite #A6, Boca Raton, Florida.   Its president was **ANTHONY JOSEPH LOVELAND** until approximately December 19, 2014.   **LUIS GARCIA** became president of USA Healthcare thereafter.

2.      During the first half of 2015, USA Healthcare business was transferred to RX Health Pros, Inc. (hereinafter "RX Health Pros").   RX Health Pros was a Florida corporation located at 40 S.E. 5th Street, Suite #405, Boca Raton, FL 33432.   **LUIS GARCIA** was president of RX Health Pros.

3.      Complete Healthcare Concierge Inc. (hereinafter referred to as "CHC") was a Florida corporation located at 1901 South Congress Avenue, Suite 150, Boynton Beach, Florida.   CHC was incorporated in or around June of 2013.   **MARK LOUIS VOLLARO** was the Chief Executive Officer for CHC.   **JASON TODD FALEY** was the Chief Operating Officer for CHC.

4.      RX Connections, LLC (hereinafter referred to as "RX Connections") was a Florida Limited Liability Company located at 600 Fairway Dr. Suite 207, Deerfield Beach, Florida.   The LLC was registered in or around January of 2015.   According to State of Florida Sunbiz records, **BENJAMIN CLARK HEATH** was an "authorized member" for RX Connections.

5.      RX Health Services Inc., (hereinafter "RX Health Services") was a Florida corporation located at 1489 W. Palmetto Park Road, #332, Boca Raton, Florida.   The corporation was incorporated in or around October of 2014.   Its president was **ANTONIO JOHN GOUSGOUNIS.**

2

6.      Clinical Solutions LLC (hereinafter "Clinical Solutions") was a Florida limited liability company located at 541 N.E. 45th Street, Pompano Beach, Florida.   It was registered in or around February of 2015.   Its manager was **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON."**   Sunbiz records register the manager as "Meganne Chiasson."

7.      T J M Holdings Inc. (hereinafter "TJM Holdings") was a Florida corporation located at 1489 W. Palmetto Park Road, #332, Boca Raton, Florida.   It was incorporated in or around February of 2015.   Its president was **ANTONIO JOHN GOUSGOUNIS**.   Its vice presidents were **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** and **JOSEPH ANTHONY CAVALLO.**

## Compounded Medications

8.      A compounded medication is a drug product mixed for an identified individual patient after the receipt of a valid prescription order that a compounded product is necessary for that identified individual.   A compounded medication is a customized combination of ingredients initiated and prescribed based upon the physician-patient-pharmacist relationship.   It takes into consideration the particular patient's diagnoses, medical condition, individual health factors and reactions to other medications.   A compounded medication is only prescribed after a determination that commercially available medications are not as beneficial or may be inappropriate or harmful to the patient.   The ingredients of each compounded medication are combined by the pharmacist in the exact strength and dosage required by an individual patient. Compounded medications are generally much more expensive than mass-produced prescription medications.

9.      Medical professionals issuing valid prescriptions for compounded medications take into consideration the specific criteria for each patient including: age, weight, physical condition, symptoms, and tolerance of medications.   Medical professionals also take into consideration the side effects and contra-indications of combining multiple medications into a single dose of a specially prepared compound.

10.      A valid prescription for a compounded medication is initiated and issued by a physician.

11.      Because compounded pharmaceuticals are custom made to fit the unique needs of each patient, the U.S. Food and Drug Administration does not regulate or approve compounded medications.   Therefore, the U.S. Food and Drug Administration also does not verify the safety or effectiveness of compounded drugs.   Due to the unique and individualized nature of compounded medications, such medications are neither commercially available nor distributed in mass quantities.

### Insurance Reimbursements

12.      Tricare was a health care program of the United States Department of Defense, Military Health System that provided coverage for military beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.   Tricare was a "Federal health care program" as defined by 42 U.S.C. §§ 1320a-7b(f), which affected interstate commerce.   Tricare provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician.

13.     Health care plans sponsored by private employers are governed by the Employment Retirement Income Security Act of 1974 ("ERISA")(along with Tricare, hereinafter collectively referred to as the "Insurance Plans").   Insurance Plans offer health insurance benefits to individuals pursuant to contracts between such Insurance Plans and health care providers.   The contracts specify the reimbursement for the agreed health care services provided therein.   The Insurance Plans reimburse health care service providers, including pharmacies, for the cost of goods and services, pursuant to the terms of the contracts, and consistent with state law.

14.     Insurance Plans delegate the processing of the claims for reimbursement for their participants' prescriptions to Pharmacy Benefit Managers.   Two of the Pharmacy Benefit Managers that handle prescription plans are CVS/Caremark and Express Scripts.   CVS/Caremark is located in Woonsocket, Rhode Island, and their computer servers, which assist in handling the information transmitted by wire for the processing of the prescriptions, are located in Arizona. Express Scripts is located in St. Louis, Missouri and their computer servers are located in New Jersey.   As set forth below, copies of the prescriptions, and other necessary information regarding the fulfillment of the prescription, were wired from a pharmacy to one of these two Pharmacy Benefit Managers for processing.

15.     The Insurance Plans were deemed "health care benefit programs," as defined in Title 18, United States Code, Section 24(b), that is, "any public or private plan or contract, affecting commerce, under which any medical benefit, item or service is provided to any individual."

16.     Under the terms of the insurance policies and consistent with state and federal law, the Insurance Plans were only responsible to reimburse for claims for services that: (a) were

5

"medically necessary" and actually rendered, (b) were provided by a properly licensed service provider, and (c) complied with the terms of the health care plans.

17.     "Marketers" or "sales representatives" were participants in the scheme to defraud who initially contacted individuals regarding the compounded medications. The marketers or sales representatives put the individuals' personal information, including their name, date of birth and insurance information on pre-printed prescription forms.   The prescription form was then sent to a telemedicine company or a medical professional so that an invalid prescription could be generated.

## COUNT 1

(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

18.     Paragraphs 1 through 17 of the General Allegations section of this Information are realleged and incorporated by reference as though fully set forth herein.

19.     Beginning at least as early as January of 2014, the exact date being unknown to the United States Attorney, and continuing through on or about October 16, 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**MARK LOUIS VOLLARO,**
**ANTHONY JOSEPH LOVELAND,**
**LUIS GARCIA,**
**ROBERT CHARLES CLARK,**
**JASON TODD FALEY,**
**JOSEPH ANTHONY CAVALLO, and**
**MARGARET ANNE CHIASSON,**
**a/k/a "MEGANNE CHIASSON,"**

did knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the United States Attorney, to knowingly and with intent to defraud, devise and

intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and, for the purpose of executing such scheme, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

20.     It was the object of the conspiracy for the defendants, **MARK LOUIS VOLLARO, ANTHONY JOSEPH LOVELAND, LUIS GARCIA, ROBERT CHARLES CLARK, JASON TODD FALEY, JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** to unjustly enrich themselves by recruiting individuals who were insured by   the Insurance Plans, causing fraudulent and invalid prescriptions for compound medication which were not medically necessary to be issued to the recruited individuals, and causing the Insurance Plans to reimburse compounding pharmacies for these fraudulent and invalid prescriptions, and distributing the proceeds among themselves.

## MANNER AND MEANS

The manner and means by which the defendants and others sought to accomplish the object of the conspiracy included the following:

21.     **ANTHONY JOSEPH LOVELAND, LUIS GARCIA,** and others, owned and operated USA Healthcare. Through USA Healthcare, **ANTHONY JOSEPH LOVELAND, LUIS GARCIA,** and others operated a call center, soliciting and using "marketers" to solicit individuals covered by an Insurance Plan to accept expensive medically unnecessary compounded medications.

7

22.     It was part of the scheme that **ANTHONY JOSEPH LOVELAND, LUIS GARCIA,** and others, would refer individuals to a medical professional so that a prescription for the compounded medication could be issued.   **ANTHONY JOSEPH LOVELAND, LUIS GARCIA,** and others, through USA Healthcare, paid the cost of the individual's medical consultation.

23.     The prescription for the compounded medication was sent to one of several pharmacies that had an agreement with **ANTHONY JOSEPH LOVELAND, LUIS GARCIA,** and others, as USA Healthcare, to pay them a portion of the proceeds that the Insurance Plan had paid to the pharmacies for the compounded medication.

24.     Initially, **ANTHONY JOSEPH LOVELAND** had provided approximately $40,000 to fund USA Healthcare.  **ANTHONY JOSEPH LOVELAND** was the sole signatory on the USA Healthcare business account and was responsible for paying expenses and distributing the profits to the co-conspirators until he turned over the responsibility to **LUIS GARCIA.** Between June of 2014 and early January of 2015, **ANTHONY JOSEPH LOVELAND** received approximately $89,000 in payments from USA Healthcare, either personally or through Loveland Enterprises Inc.

25.     **LUIS GARCIA** was added as a signatory to the USA Healthcare bank account on April 1, 2014, and thereafter became the signatory on checks issued through USA Healthcare. **LUIS GARCIA** became president of USA Healthcare in December of 2014.   Between June of 2014 and June of 2015, **LOUIS GARCIA,** received approximately $46,000 from USA Healthcare.

26.     **JOSEPH ANTHONY CAVALLO** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON"** worked with USA Healthcare as marketers, and received a portion

8

of the profits from any prescriptions that were generated as a result of their efforts. **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON"** created and caused to be created "prescription pads" which identified specific medical conditions and included compounded medications which purportedly addressed the conditions. **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON"** and others manipulated the specific ingredients and the concentration of the ingredients to be included in the compounded medications that were pre-printed on the "prescription pads." These "prescription pads" were used by **JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** and other marketers to begin the process of obtaining a purportedly valid order from a physician for a compounded medication. Between May of 2014, and February of 2015, **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON"** received approximately $18,000 from USA Healthcare. Between June of 2014, and February of 2015, **JOSEPH ANTHONY CAVALLO** received approximately $222,000 from USA Healthcare.

27.     **ROBERT CHARLES CLARK** provided co-defendants at USA Healthcare Inc. lists of patient information, including names, dates of birth, social security numbers, and individual identification numbers for insurance plans. Between July of 2014, and May of 2015, **ROBERT CHARLES CLARK** either personally or through his businesses, received $223,000 from USA Healthcare.

28.     In the summer of 2014, **ANTHONY JOSEPH LOVELAND** and others were approached by **MARK LOUIS VOLLARO** and **JASON TODD FALEY,** operators of Complete Healthcare Concierge. Using telemedicine, Complete Healthcare Concierge afforded access to medical professionals, who purportedly would evaluate the individual, and issue prescriptions for

expensive compound medications.    After the meeting between **ANTHONY JOSEPH LOVELAND**, **MARK LOUIS VOLLARO, JASON TODD FALEY** and others, USA Healthcare Inc. marketers sent partially completed "prescription pads" which contained individuals' names, and other information to Complete Healthcare Concierge.   Based on these referrals, Complete Healthcare Concierge generated medically unnecessary fraudulent prescriptions for compounded medications.   Defendants **MARK LOUIS VOLLARO** and **JASON TODD FALEY** charged USA Healthcare and the marketers a fee for a telemedicine consultation associated with each prescription, and further demanded ten percent of the monies USA Healthcare received from the pharmacies for the compounded medications.   Between October of 2014, and January of 2015, USA Healthcare paid Complete Healthcare Concierge approximately $50,000.

29.    The Compounding Pharmacies used facsimile and electronic mail to bill the Insurance Plans for the compounded medication.   Once the Insurance Plans paid for the medication, a set percentage of the Insurance Plans' payments were given to the defendants and the money would be shared among the co-conspirators associated with USA Healthcare, or its successor, RX Health Care Pros.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 2
(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

30.    Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

10

31.     Beginning at least as early as January of 2014, the exact date being unknown to the United States Attorney, and continuing through on or about February of 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**MARK LOUIS VOLLARO,
ANTHONY JOSEPH LOVELAND,
JASON TODD FALEY,
JOSEPH ANTHONY CAVALLO,
MARGARET ANNE CHIASSON,
a/k/a "MEGANNE CHIASSON,"
JAMES DONALD ENGIMANN,
BENJAMIN CLARK HEATH,
ANTONIO JOHN GOUSGOUNIS, and
CHRISTOPHER MARGAIT,**

did knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the United States Attorney, to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and, for the purpose of executing such scheme, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

32.   It was the object of the conspiracy that the defendants, **MARK LOUIS VOLLARO, ANTHONY JOSEPH LOVELAND, JASON TODD FALEY, JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON," JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH, ANTONIO JOHN GOUSGOUNIS, and CHRISTOPHER MARGAIT,** to unjustly enrich themselves by recruiting individuals who

11

were insured by the Insurance Plans, causing fraudulent and invalid prescriptions for compound medication which were not medically necessary to be issued to the recruited individuals, and causing the Insurance Plans to reimburse compounding pharmacies for these fraudulent and invalid prescriptions, and distributing the proceeds among themselves.

## MANNER AND MEANS

The manner and means by which the defendants and others sought to accomplish the object of the conspiracy included the following:

33.   **MARK LOUIS VOLLARO** and **JASON TODD FALEY** owned and operated Complete Healthcare Concierge, a telemedicine company, which purportedly provided medical services via telephone to individuals for the sole purpose of prescribing compounded medications. They charged the marketers and marketing companies that provided them with patient names for the consultation that generated the prescription, and the marketers paid for the consultations.

34.   In early 2015, **ANTHONY JOSEPH LOVELAND, JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** left USA Healthcare and joined Complete Healthcare Concierge.   At that time **MARK LOUIS VOLLARO** and **JASON TODD FALEY** expanded their business to include "marketing," that is, locating individuals with health care insurance who would agree to receive expensive compound medications.   **MARK LOUIS VOLLARO, JASON TODD FALEY** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** identified a Compounding Pharmacy in South Florida that would accept its prescriptions and bill the Insurance Plans.   The Compounding Pharmacy agreed to provide them a percentage of the amount paid by the Insurance Plan.

35.    **JASON TODD FALEY** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON"** created and caused to be created "prescription pads" which identified specific medical conditions and included a compounded medication which purportedly addressed the condition.   The defendants, **JASON TODD FALEY** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** and others manipulated the specific ingredients and the concentration of the ingredients to be included in the compounded medications which were pre-printed on the "prescription pads."    These "prescription pads" were used by the defendants, **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON," ANTONIO JOHN GOUGOUNIS, JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,** and **CHRISTOPHER MARGAIT,** and other marketers, to begin the process of obtaining purportedly valid orders from physicians for compounded medications.

36.    **ANTONIO JOHN GOUGOUNIS, JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,** and **CHRISTOPHER MARGAIT,** were involved in locating and soliciting individuals covered by an Insurance Plan to accept expensive and medically unnecessary compound medications.   Each of these defendants provided marketing services for Complete Healthcare Concierge Inc. and used the purported medical services provided by Complete Healthcare Concierge to generate prescriptions.   The prescriptions generated were not the result of valid examinations of the patients, nor were the compounded medicines medically necessary.

37.    **MARK LOUIS VOLLARO, JASON TODD FALEY, ANTHONY JOSEPH LOVELAND, JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** realized that receiving two payments as Complete Healthcare

Concierge in the same scheme might trigger an investigation by the Insurance Plans, Pharmacy Benefit Managers, or law enforcement authorities.   First, they received the payment for the medical consultation that generated the prescription; and second, they received a portion of the prescription payment received from the Insurance Plan.   Thereafter, co-conspirators developed a plan with the operators of the Compounding Pharmacy to have the money owed to CHC and its marketers paid to other businesses, including businesses owned and operated by **JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH, CHRISTOPHER MARGAIT, MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON," and ANTONIO JOHN GOUGOUNIS.**

38.   As part of this scheme, the defendants created or used other businesses that they were affiliated with including;

a.   Rx Connections was owned and operated by **JAMES DONALD ENGIMANN** (Chief Financial Officer), **BENJAMIN CLARK HEATH** (Authorized Member), and **CHRISTOPHER MARGAIT** (Chief Marketing Officer).

b.   T J M Holdings was associated with **ANTONIO JOHN GOUGOUNIS** (President), **JOSEPH ANTHONY CAVALLO** (Vice President), and **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON"** (Vice President).

c.   Capital Advisor Group was associated with **JAMES DONALD ENGIMANN** (Authorized Member) and **CHRISTOPHER MARGAIT** (Manager).

d.   **MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON,"** was the Sole Proprietor and Manager of Clinical Solutions.

e.   **ANTONIO JOHN GOUGOUNIS** was the Sole Proprietor and President of RX

14

Health Services.

39.     Each of these businesses received money from the Compounding Pharmacy or its affiliates that was generated by payments from the Insurance Plans for the medically unnecessary prescriptions.   The defendants listed above then kept or transferred the money among themselves and their co-defendants including **MARK LOUIS VOLLARO, JASON TODD FALEY, and ANTHONY JOSEPH LOVELAND,** to distribute the profits generated by the scheme.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 3
(Conspiracy to Launder Monetary Instruments - 18 U.S.C. § 1956(h))

40.     Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

41.     The Manner and Means of the conspiracy section set forth in paragraphs 21 to 29 in Count 1 and paragraphs 33 to 39 in Count 2 of this Information are hereby re-alleged and expressly incorporated as if set forth herein.

42.     From in or about 2014, through in or around July of 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**MARK LOUIS VOLLARO
JOSEPH ANTHONY CAVALLO,
MARGARET ANNE CHIASSON,
a/k/a "MEGANNE CHIASSON,"
JAMES DONALD ENGIMANN,
BENJAMIN CLARK HEATH,
ANTONIO JOHN GOUSGOUNIS, and
CHRISTOPHER MARGAIT,**

15

did knowingly combine, conspire, and agree with each other and with persons known and unknown to the United States Attorney to commit offenses against the United States, that is: (a) to knowingly engage in monetary transactions affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957; and (b) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is wire fraud and health care fraud, in violation of Title 18, United States Code, Sections 1343 and 1347.

In violation of Title 18, United States Code, Section 1956(h).

## COUNT 4
(Laundering of Monetary Instruments – 18 U.S.C. § 1956(a)(1)(B)(i)

43.     Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

44.     On or about May 23, 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**JAMES DONALD ENGIMANN,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: did sign and issue a check for $4,000 drawn on the Rx Connections account at Citibank ending in 2068, made payable to Capital Advisor Group, which transaction involved the proceeds of a specified unlawful activity; specifically wire fraud and health care fraud, in violation of Title 18, United States Code, Section 1343 and 1347, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNTS 5 - 6
(Laundering of Monetary Instruments – 18 U.S.C. § 1956(a)(1)(B)(i))

45.     Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

46.     From on or around the dates listed below in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**ANTONIO JOHN GOUSGOUNIS,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity,

specifically wire fraud and health care fraud, in violation of Title 18, United States Code, Section 1343 and 1347, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, specifically:

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 5 | October 16, 2015 | Caused a wire transaction of $2000 from Bank of America account ending in 8873 to Loveland Enterprises account ending in 1117 at Wells Fargo Bank N.A. |
| 6 | February 29, 2016 | Caused a wire transaction of $1,000 from Bank of America account ending in 8873 to Loveland Enterprises account ending in 7980 at Wells Fargo Bank N.A. |

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 7 - 8
### (Laundering of Monetary Instruments – 18 U.S.C. § 1957(a))

47.     Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

48.     On or around the dates listed below, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**MARK LOUIS VOLLARO,**

18

did knowingly engage in monetary transactions affecting interstate commerce, by, through, and to

a financial institution, in criminally derived property of a value greater than $10,000, such property

having been derived from a specified unlawful activity, and knowing that the property involved in

the financial transactions represented the proceeds of some form of specified unlawful activity, as

more specifically described below:

| Count | Approximate Date | Financial Transaction |
|-------|------------------|------------------------|
| 7 | October 29, 2015 | Caused a wire transfer of $20,000 from Citibank account belonging to Complete Healthcare Concierge ending in 2081 to himself, Mark Louis Vollaro, at Citibank account ending in 2569 |
| 8 | December 24, 2015 | Caused a wire transfer of $20,000 from Citibank account belonging to Complete Healthcare Concierge ending in 2081 to himself, Mark Louis Vollaro, at Citibank account ending in 2569 |

49.     It is further alleged that the specified unlawful activity is wire fraud, in violation of

Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Information are hereby re-alleged and by this reference fully

incorporated herein for the purpose of alleging forfeiture to the United States of America of certain

property in which any of the defendants, **MARK LOUIS VOLLARO, ANTHONY JOSEPH**

**LOVELAND, LUIS GARCIA, ROBERT CHARLES CLARK, JASON TODD FALEY, JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "MEGANNE CHIASSON," JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH, ANTONIO JOHN GOUSGOUNIS,** and **CHRISTOPHER MARGAIT,** have an interest.

2.      Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Sections 1956(h) or 1957, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of the court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be divided without difficulty.

The United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853.


(Harry C. Wimure JR) FOR
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


CYNTHIA R. WOOD
ASSISTANT U.S. ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

**MARK LOUIS VOLLARO, et. al.**

_____ /
Defendants

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New defendant(s)          Yes _____   No _____
Number of new defendants          _____
Total number of counts          _____

**Court Division:** (Select One)
___ Miami      ___ Key West
✓ FTL      ___ WPB      ___ FTP

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:      (Yes or No)      No_____
   List language and/or dialect      English

4. This case will take _30_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

(Check only one)

|     |               |        |
|-----|---------------|--------|
| I   | 0 to 5 days   | _____ |
| II  | 6 to 10 days  | _____ |
| III | 11 to 20 days | _____ |
| IV  | 21 to 60 days | ✓      |
| V   | 61 days and over |     |

(Check only one)

|         |        |
|---------|--------|
| Petty   | _____ |
| Minor   | _____ |
| Misdem. | _____ |
| Felony  | ✓      |

6. Has this case previously been filed in this District Court?      (Yes or No)      No_____
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?      (Yes or No)      No_____
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)      No_____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?      Yes_____   No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?      Yes_____   No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?      Yes ✓   No_____

_____
Cynthia R. Wood
ASSISTANT UNITED STATES ATTORNEY
Court ID A5501329

*Penalty Sheet(s) attached

REV 6/5/2020

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>MARK LOUIS VOLLARO</u>

**Case No**: _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Counts:   7 - 8

<u>Laundering of Monetary Instruments</u>

<u>18 U.S.C. § 1957</u>

**\*Max. Penalty:** Ten (10) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Counts:

_____

_____

**\*Max. Penalty:**

Counts:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special
assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>ANTHONY JOSEPH LOVELAND</u>                **Case No**: _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>LUIS GARCIA</u>          **Case No**: _____

Count: 1

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

<u>* **Max. Penalty:**</u> Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

<u>**\*Max. Penalty:**</u>

Count:

<u>**\*Max. Penalty:**</u>

Count:

<u>**\*Max. Penalty:**</u>

Count:

<u>**\*Max. Penalty:**</u>
   *Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>ROBERT CHARLES CLARK</u>        **Case No**: _____

Count: 1

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>JOSEPH ANTHONY CAVALLO</u>             **Case No**: _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>JASON TODD FALEY</u>                    **Case No**: _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>MARGARET ANNE CHIASSON</u>          **Case No:** _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

 \*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: <u>JAMES DONALD ENGIMANN</u>                **Case No**: _____

Count: 2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:   4

<u>Laundering of Monetary Instruments</u>

<u>18 U.S.C. § 1956(a)(1)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: <u>BENJAMIN CLARK HEATH</u>          **Case No**: _____

Count: 2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANTONIO JOHN GOUSGOUNIS          **Case No**: _____

Count: 2

Conspiracy to Commit Wire Fraud

18 U.S.C. § 1349

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

Conspiracy to Launder Monetary Instruments

18 U.S.C. § 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Counts:   5 - 6

Laundering of Monetary Instruments

18 U.S.C. § 1956(a)(1)

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>CHRISTOPHER MARGAIT</u>       **Case No**: _____

Count: 2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.